[Civ. No. 537.   Third Appellate District.—March 16, 1909.]

## E. GONELLA, Appellant, v. EMALINE SIMMONS and H. O. SIMMONS, Respondents.

EJECTMENT—POSSESSION UNDER CONTRACT OF PURCHASE FROM OWNER—OUSTER BY GRANTEE OF ADJOINING LAND.—One who is in possession of land under a contract of purchase of a tract of land, on which he has made improvements, may maintain ejectment against the grantee of adjoining lands from the same grantor who contracted with plaintiff, when such adjoining owner has wrongfully taken possession of part of the property possessed by such purchaser.

ID.—DISPUTED BOUNDARY LINE—LOCATION OF SURVEY AND FENCE—FINDING FOR DEFENDANT AGAINST EVIDENCE.—When it appears that plaintiff's land is located south of defendant's land, and the north boundary line of plaintiff's land is identical with the south boundary of defendant's line, and the action of ejectment involves its location, *held*, that the evidence shows that the boundary was established by a survey and monuments in accordance with the calls of the defendant's deed, and by a fence originally erected thereon; that the plaintiff is entitled to recover, and that findings and judgment for the defendant are unsupported by the evidence.

APPEAL from a judgment of the Superior Court of Sonoma County.   Thomas C. Denny, Judge.

The facts are stated in the opinion of the court.

J. M. Thompson, for Appellant.

C. H. Pond, for Respondents.

CHIPMAN, P. J.—The action is to recover possession of certain land from defendants, who are alleged to have wrongfully entered thereon and dispossessed plaintiff.   Defendants

10 Cal. App.—17

had findings and judgment, after trial by the court without
a jury, and plaintiff appeals from the judgment on bill of
exceptions.

The question at issue is the true location of the dividing
line between plaintiff's and defendants' land and the south
boundary of defendants' land.

It was agreed at the trial that on November 4, 1904, M. C.
Meeker, then the owner, conveyed by deed a certain tract of
land—about twenty acres—to defendant Emaline Simmons,
and that shortly afterward Meeker made an oral agreement
to convey to plaintiff a tract of about fourteen acres adjoin-
ing her land on the south; that plaintiff made a partial pay-
ment to Meeker and was by the latter put in possession of
the land and remained in possession until January 14, 1908,
when defendants entered upon the strip of land in controversy
and ousted plaintiff therefrom and now holds possession
thereof. This strip of land contains about one acre. The
question involved relates to the true location of the south
boundary of defendants' land as conveyed to defendant Ema-
line Simmons, and this boundary line depends upon the
location of the initial point in the description found in the
Meeker deed to Simmons. The deed is the same brought into
view in No. 536, entitled *Meeker* v. *Simmons,* this day decided,
*ante,* p. 250. It reads: "Beginning at a stake which bears
South 50½° West of a stake situated under the center of the
railroad bridge, said bridge being the crossing of the North
Shore Railroad and the county road leading from Occidental to
Camp Meeker, and 1.94 chains distant." The description then,
as we have held, in *Meeker* v. *Simmons, supra,* follows along
the center of the county road (which, at the distance mentioned
from the center of the railroad bridge, was the initial point of
the description) and the center of the proposed road, to the
northeast corner of the tract, thence along the north boundary
to a section line, thence along the section line for the west
boundary to the center of a county road and thence down said
road to the southwest corner of the tract, and for the south
boundary, now in question, reading as follows: "thence leaving
said road, South 88¼° East, 19.60 chains to the place of
beginning."

The Simmons tract was originally surveyed and the lines
run around it by surveyor Symmonds, and the starting point
was located one hundred and twenty-eight feet—1.94 chains—

distant from the center of the bridge referred to, which be-. ginning point bears 50½° west of the center of said bridge. To find this starting point conformably to the Simmons deed, the surveyor must place his instrument at the center of the bridge in order to find the direction south 50½° west, which would bring him to the point of beginning at a distance of one hundred and twenty-eight feet. The deed leaves no doubt or uncertainty as to this. Symmonds testified that he so located the point of beginning and that he gave the field-notes to Meeker from which the deed was made. He testified: "In making this survey I ran the line between the premises of plaintiff and the land of defendants. Some of the line was brushy and had to be cut out along the line. I was along the line afterward and saw a fence standing on the line I surveyed between the parties. A few weeks ago I was there again, and the fence running from the east side had been moved south from where it had originally been built. I made only the one survey of this piece of land. Mrs. Simmons and her son were present with us nearly all the day when I surveyed it. I made the survey at the request of Mr. Meeker. This survey was made from the center of the railroad bridge. . . . The south line of the survey was between the land of the defendants and plaintiff Gonella. The fence I saw there was built on the line that I surveyed and was in a direct line with the point of beginning where I drove a stake in the ground. I drove that stake myself. After the first survey was made I surveyed a great deal around there, and I fixed the starting point in the middle of the county road under the bridge; that wasn't the center of the bridge by any means, and since that time we use the last-named point in making surveys near that place."

M. C. Meeker, grantor of the parties, testified to like effect; he was present when the survey was made. Speaking of the south line of defendants' land he testified: "When the line was surveyed we cut away the brush along the line and it was plain to be seen. The line fence built by the parties remained for two years or more. This last winter the defendants had part of it taken down and set further south, and on the land that I say is the land of the plaintiff. The defendant also broke down some chicken-houses, and split up the lumber and scattered some grain belonging to plaintiff which was in one of the houses. The south line of the defendants'

land where the fence was first built was in a direct line with the starting point of the survey. The stake at the starting point was in the center of the road, and the fence was built to the west side of the road.''

Witness Proctor for plaintiff testified that he built the railroad bridge referred to in the Simmons deed; that the county road runs under the bridge at about sixteen feet from its south end; that the bridge is eighty feet long.

Plaintiff testified: "I saw a stake driven in the ground in the center of the county road, a little post, where they surveyed the line between my land and the defendants'. The line fence we built was directly in line with this stake. The fence was built to the west side of the road, and within twenty feet of the stake. The fence comes to the west side of the county road. If the fence had been extended it would have hit the stake. I saw the surveyor drive this stake. The line fence built by the defendants and me remained for about two years and then the defendant tore it down and removed it two hundred feet or more. . . . The surveyor was Mr. Symmonds. I don't know whether it was the first time or not." (As Symmonds drove but one stake at this point the witness could have referred to no other.) "The line fence which was agreed upon between the defendants and me was at the same place pointed out by Mr. Meeker. It was pointed out by Mr. Meeker and agreed to by Mrs. Simmons. Mrs. Simmons agreed to pay one-half for building the fence. . . . She told me to build the fence and she would pay for half of it, . . . and we agreed that I would build the fence and she would pay half of it.''

Surveyor Winkler testified for defendants that he surveyed the defendants' tract of land "a few months" prior to the trial, which was in April, 1908; that he got the description from the deed; that the first time he surveyed it "more or less according to what" Mr. Meeker told him. He testified: "I afterward made a survey of the south and east sides, using the deed for my notes. . . . I began my survey at a point under the bridge, where the wagon road crosses under the railroad bridge." Surveyor Green made a survey of defendants' land and testified for defendants: "I surveyed it on the line according to the deed. . . . I made the survey last Saturday and made a map of it. I started my survey at a stake in the center of the county road under the bridge. It

is the center of the railroad bridge to the best of my judgment; it is in the center of the railroad track underneath the center of the bridge. On the county road." "Q. You mean you started in the center of the county road? A. Yes, and in the center of the railroad bridge. Q. So far as its width is concerned and not its length, that is what you mean? A. Yes, sir. Q. Well, that would not be in the center of the railroad bridge. A. I think that is the way the deed reads, if I am not mistaken. Q. If the railroad bridge is eighty feet in length and you started within sixteen feet of the south end, that would not be in the center, would it? A. No, sir, if you call the railroad bridge that way it would not be. Q. If you had commenced we will say, twenty feet further north under the bridge, it would have brought your starting point about twenty feet further to the north, wouldn't it? A. I could not do that because the county road doesn't go up there, and I have to start in the center of the county road. Q. Now, I will ask you again, if you did start twenty feet further north than where you did, then your peg, your starting point, would have been about twenty feet further north from the peg where you really started, wouldn't it? A. Yes, I guess it would, if I had started there certainly, but I could not get 50½° from the center of that road if I started further north."

Defendant H. O. Simmons testified: "The east end of the line fence was built from the county road west to the orchard, some two hundred feet. The remainder of the fence Gonella built and we paid him for half of it. . . . The line of survey where we built the fence was plain to be seen, they had cut away the brush so as to make the survey; but a different survey was made afterward. . . . The fence was built along the line where the brush had been cut away. There was no dispute between Mr. Gonella and myself about the division line, everything was pleasant. The Court: You both thought that it was the correct line? A. Yes, sir, we did honestly." Defendant Emaline Simmons testified that she "never made any agreement with Mr. Gonella as to the line between his land and mine. He put the fence where Mr. Meeker laid the line out. There was no agreement whatever. . . . The first part of the fence, next to the road, had been built for a year before there was any work done. I asked him if that fence

was on the line, and when he said it was we went ahead with the fence together.''

This is substantially all the evidence in the case.

Except that defendants testified that there was no agreement between plaintiff and defendants that the dividing line should be where the fence was first built, there is no conflict in the testimony. The boundaries of defendants' land were established by surveyor Symmonds and the fence was put on the south boundary surveyed by him. Upon this point there is no disagreement, nor is there any dispute that all parties assumed the south boundary to be correct. The uncontradicted testimony of Symmonds and Meeker shows that the line was located agreeably to that survey.

The whole controversy arose from surveys made by Winkler and Green after the parties had acted upon what defendants now claim was a mutual mistake and after Meeker had sold the land to plaintiff. Turning to Winkler's and Green's testimony: Winkler's testimony is very brief, but it appears that he began his survey ''at a point under the bridge where the wagon road crosses under the railroad bridge.'' He does not say at what point ''under the bridge'' he started except that it was ''where the wagon road crosses.'' He does not pretend that he started at a point ''under the center of the railroad bridge,'' which the deed calls for. Winkler's testimony may be dismissed as too uncertain and indefinite and fragmentary to throw any light upon the question.

Green is more specific. He started in the center of the county road under the center of the railroad bridge as he considered the center of the bridge. But he admitted that this center was ''so far as its width is concerned and not its length.'' The testimony of Proctor is that the county road ''runs under the bridge at about sixteen feet from its south end.'' The bridge (which is located nearly north and south) is eighty feet in length and its center called for in the deed is at a point forty feet from each end. This was the point from which Symmonds established his initial stake in the center of the county road 1.94 chains distant which bore 50½° west; and this was the survey which furnished the description for the deed from Meeker to Mrs. Simmons, and it was by this survey the south boundary of the land of defendants was established and on this line the fence between plaintiff's and defendants' land was first built. It appeared

that later in making other surveys in that region Symmonds started from the center of the county road under the bridge, as did Winkler and Green in their later survey of defendants' land. But it is admitted that the Simmons deed must control, and that deed unmistakably refers to a point "under the center of the railroad bridge," and is absolutely controlling. In starting, as Winkler and Green did, at a point south of this center, which they had no right to do, it necessarily cut off a strip of plaintiff's land as wide as that distance and tapering, as it does, to a point at the southwest corner of Mrs. Simmons' land, to which point the parties had built their fence.

It was stipulated that plaintiff had a contract for the purchase of the land adjoining defendants' land on the south. Their south boundary, as described by the Symmonds survey, as described in their deed is plaintiff's north boundary.

The finding of the court that this disputed strip of land belongs to defendants is without support in the evidence, as is also the finding that the fence erected by defendants "and as now standing marks the dividing line between the lands of the plaintiff and the defendants herein."

Respondent makes the point that as plaintiff had no complete title and only an agreement to purchase, he cannot maintain the action as against one holding title. But we have seen that defendants have no title to the land in dispute, while plaintiff has an equitable title under which he entered into possession and made valuable improvements. It is this possession from which defendants wrongfully ousted him that he now seeks. We see no reason why he should not do so.

The judgment is reversed.

Burnett, J., and Hart, J., concurred.